# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

DEEPIKA REDDY,

Plaintiff,

v.

5:19-CV-1493
(MAD/ATB)

GILLES R. R. ABITBOL, ESQ., et al.,

Defendants.

DEEPIKA REDDY, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

Presently before the court is a pro se complaint which was transferred from the Southern District of New York. (Complaint ("Compl.")) (Dkt. No. 1, 2, 19, 20). Plaintiff has paid the filing fee.  Plaintiff brings this action pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. and various state law causes of action.  Defense counsel has appeared for three of the defendants.

On December 6, 2019, Arthur J. Siegel, Esq., counsel for Douglas M. McRae, Esq. requested an extension of time to respond or otherwise move in opposition to the complaint. (Dkt. No. 23).  On December 10, 2019, the court granted all defendants an extension of time to respond to the complaint until January 20, 2020. (Dkt. No. 25).  In his December 6, 2019 letter-motion, Attorney Siegel also requested that this court undertake an initial review of the plaintiff's complaint. (*Id.*)  Paul G. Ferrara, Esq., counsel for defendant Joseph M. Finnerty, Esq, subsequently joined in Attorney Siegel's motion. (Dkt. No. 28).

## I. __Initial Review__

Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party or parties have been served and have had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed, notwithstanding payment of the filing fee. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II.  Complaint

### A.  Generally

In a very lengthy[1] and confusing complaint, plaintiff alleges that the defendants, together with non-defendant conspirators, committed various types of crimes, to cause plaintiff injury to her and her business. (Compl. *generally*).  The entire complaint centers around plaintiff's claim that defendant attorney Gilles Abitbol, Esq. was an "illegal alien" at the time that he represented her on various New York State and Federal Court actions, resulting, inter alia, in those actions becoming "null and void." (Compl. Count I, ¶¶ 321-25).  In addition to damages, plaintiff requests a declaratory judgment, declaring those "cases" null and void. (*Id.*) (citing 28 U.S.C. § 2201, 2202).

### B.  Procedural Background

In order to better understand plaintiff's claims in this action, I will undertake a short description of the procedural background that has resulted in the present case. Many of the background facts are clearer when read together with Judge D'Agostino's March 31, 2015 decision in *Reddy v. Catone*, No. 5:13-CV-707, 2015 WL 11023213 (N.D.N.Y. Mar. 31, 2015), *aff'd*, 630 F. App'x 120 (2d Cir. 2015).[2]  I have done so, and have included those facts as appropriate.

Plaintiff, a dentist, licensed to practice in New York State, brought an action in

---

[1] The court notes that the complaint is likely also in violation of Fed. R. Civ. P. 8, which requires a "short and plain" statement of the claim.  This complaint is anything but short and plain. However, rather that recommend dismissal based on Rule 8, the court will address the merits of plaintiff's claims.

[2] I am only giving a very brief overview of the facts in plaintiff's 2013 case, familiarity with which is assumed for purposes of this decision.

the Northern District of New York 2013,[3] in which she sued various state officials in connection with complaints brought against her by some of her patients.[4] She was represented in her 2013 federal action by defendant Attorney Gilles Abitbol. Judge D'Agostino dismissed plaintiff's complaint, finding, inter alia, that she was not denied due process by the New York State defendants, and that the individual defendant dentists did not conspire to violate her constitutional rights. 2015 WL 11023213, at *14-20. The dismissal of 13-CV-707 was affirmed by the Second Circuit. *Reddy v. Catone*, *supra*. Plaintiff moved to "vacate" the district court's decision after the Second Circuit had affirmed. However, Judge D'Agostino denied plaintiff's motion. *Reddy v. Catone*, No. 13-CV-707, 2016 WL 6471226 (N.D.N.Y. Nov. 1, 2016).

Plaintiff also brought various New York State lawsuits. In this RICO complaint, plaintiff states that Attorney Abitbol "represented [plaintiff] in multiple State Court Proceedings, including a defamation claim against a local television station for reporting on Plaintiff's confidential disciplinary proceedings . . . , [and] in a malpractice suit against Plaintiff's former attorneys in the defamation case and in an Eviction and

---

[3] After initial dismissal under Rule 8, plaintiff was able to amend her complaint sufficiently to allow it to proceed. 2015 WL 11023213, at *1.

[4] Rather than submit to formal disciplinary action in her New York State administrative proceedings, plaintiff consented to a partial restriction of her license, followed by the completion of additional training in the areas of root canals and extractions. 2015 WL 1102323, at *2. Plaintiff successfully completed her requirements under the consent order, but after one year of a three year probationary period, she requested "reconsideration" by the State Board of Regents. *Id.* at *3. Plaintiff's letter essentially complained about the way she was treated and complained that she had been subjected to discrimination. *Id.* This letter to the State Board of Regents was treated as an application for reconsideration the result of the administrative proceedings under New York regulations, but was denied by Louis J. Catone, the Director of the Office of Professional Discipline. Plaintiff filed an Article 78 proceeding in the Appellate Division, Third Department, which affirmed the administrative finding. *Id.* at *3-4.

Settlement proceeding[] against Igor Melnik a dentist who purchased Plaintiff's dental practice." Compl. at 2.

Now, unhappy with Attorney Abitbol's performance in the above-mentioned law suits, and unhappy with the outcome of the cases in which he represented her, plaintiff has seized upon defendant Abitbol's alleged illegal immigrant status to file this RICO claim. She argues that all the prior law suits in which she was represented by this attorney are "null and void." As defendants in this lawsuit, in addition to Attorney Gilles Abitbol, plaintiff has named Attorney Abitbol's brother and sister-in-law (both attorneys),[5] who allegedly helped defendant Gilles Abitbol obtain a visa in 2002 and allegedly made false representations to the Department of Labor with respect to Attorney Gilles Abitbol from 2004 until 2007. (Compl. at 3). Plaintiff has sued Douglas M. McRae, Esq. and his law office of Bond, Shoeneck, & King for representing defendant Gilles Abitbol in a New York State Court action brought against him by the plaintiff. (Compl. ¶¶ 195-289). Plaintiff has also named Joseph Finnerty, Esq.,[6] who apparently represented WSYR, the radio station, sued by plaintiff in New York State Court while she was represented by defendant Gilles Abitbol. (Compl. ¶¶ 128-94). The caption of the complaint also names "Does 1-10" and Corporations X and Y. However, there are no facts alleged in the complaint with respect to these unidentified defendants.

---

[5] Plaintiff has also named their law firm as a defendant.

[6] Defendant Attorney Finnerty was a partner at the law firm of Barclay, Damon, LLP in Buffalo, New York, but plaintiff states that, as of September 1, 2019, defendant Finnerty has formed his own law firm in Buffalo. (Compl. ¶ 8). Defendant Finnerty represented local television station, WSYR in the defamation action filed by plaintiff against WSYR in New York State court. (Compl. ¶¶ 128-94).

Plaintiff has also named a variety of "Non-Party Government Entities," including the Supreme Court, Appellate Division, Fourth Department; the Fifth Judicial District Grievance Committee; the Supreme Court in Onondaga County; and the United States District Court for the Northern District of New York. (Compl. ¶¶ 11-14).

## III. Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

### A. Legal Standards

The RICO statute provides a private right of action to any person injured in her business or property by reason of a violation of Title 18 United States Code, section 1962. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006) (citing 18 U.S.C. § 1964(c)). In order to establish a civil RICO claim, the plaintiff must plead the conduct of an enterprise through a pattern of racketeering activity that causes injury to business or property as a result of the RICO violation. *Lundy v. Catholic Health Systems of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)). The pattern of racketeering activity must consist of two or more predicate acts of racketeering listed in 18 U.S.C. § 1961(1), (5). *Id.* The RICO conduct must be both the proximate and but for cause of the plaintiff's injury. *Id.* at 283.

RICO provides only for injury to business or property. The statute does not provide recovery for physical or emotional injuries. *Kesick v. Ulloa*, No. 1:10-CV-1248, 2012 WL 2873364, at *9 (N.D.N.Y. July 12, 2012) (quoting *Williams v. Dow Chemical Co.*, 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003)); *Moore v. Guesno*, 485 F. Supp. 2d 300, 305 (W.D.N.Y. 2007). In addition, it is well-settled that civil RICO "is

an unusually potent weapon - the litigation equivalent of a thermonuclear device. Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Gruber v. Gilbertson*, No. 16-CV-9727, 2019 WL 4458956, at *5 (S.D.N.Y. Sept. 17, 2019) (quoting *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996)) (internal quotations omitted).

### B.    Application

This court has carefully reviewed the plaintiff's complaint and finds that, in addition to possible violations of Rule 8, plaintiff's claims are frivolous. She essentially continues to press her claim that, because defendant Abitbol is an undocumented or "illegal alien," everything that he has done, and every individual who has ever assisted him, defended him, or opposed him in a lawsuit without claiming that he was an illegal alien, has now become part of the RICO "enterprise," and has allegedly engaged in illegal activities. Every time that defendant Gilles Abitbol mailed a document in a lawsuit, purchased property, or defended himself in a lawsuit, plaintiff has determined that a "predicate act" of mail or wire fraud has occurred. Plaintiff has been unsuccessful in every tribunal in which she has attempted to raise his allegedly illegal status, and she now believes that by packaging her claims as a RICO complaint, she may accomplish what she has been unable to do in any state or federal court.[7]

---

[7] The frivolous nature of plaintiff's claims are clearly reflected in her statements that all the courts and the administrative body which have failed to hold in her favor, have assisted in the fraud. As stated above, these courts and administrative bodies include the Supreme Court of New York, Appellate Division, Fourth Department; the Fifth Judicial District Grievance Committee; the Onondaga

Plaintiff's first problem is that it appears that defendant Gilles Abitbol, was, and still is, admitted to practice law in the State of New York and in the Northern District of New York. Plaintiff apparently does not contest this. In fact, she has included as an exhibit a letter she received from the Principal Counsel to the Fifth Judicial District Grievance Committee, dated September 17, 2019, indicating that plaintiff's complaint against defendant Gilles Abitbol was thoroughly investigated and "closed." (Pl.'s Ex. 25).

However, plaintiff continues to argue that because defendant Gilles Abitbol is an illegal alien, he is automatically ineligible to practice law in the United States, and that every case he has ever handled is therefore, null and void, including her lawsuits.[8] Some of plaintiff's alleged predicate acts involve violating what plaintiff claims is defendant Abitbol's "fiduciary" duty to plaintiff to inform her of his "immigration status." She alleges that, if she had known this "status," she would have chosen a different attorney, and she would have won her cases.

---

County Supreme Court; and the United States District Court for the Northern District of New York. (Pl.'s RICO Statement ¶ 3(a)-(d)). Although plaintiff has not named these entities as defendants, she refers to them in answer to a question about "alleged wrongdoers, other than the defendants listed above." (Pl.'s RICO Statement ¶ 3). The question also asks about the "alleged misconduct of each wrongdoer." (*Id.*) Once again, it is clear that plaintiff is simply challenging the holdings of all of these courts and the Grievance Committee.

[8] As exhibits, plaintiff has included page after page of what appears to be documents indicating that defendant appeared as counsel in a number of state court law suits. (Pl.'s Exs. 4-5, 10) (Dkt. No. 1). Plaintiff has also included documents relating to employer "identification" for an H-1B Visa. (Pl.'s Exs. 1, 6, 9). An H-1B Visa is a non-immigrant visa, allowing United States companies to employ graduate level workers in specialty occupations. https://my.uscis.gov/exploremyoptions/h1_visas_for_temporary_workers Defendant Gilles Abitbol's name does not appear on either of the documents. Plaintiff has also attached information from 2004, relating to defendant Abitbol's purchase of real property and discharge of mortgage. (Pl.'s Exs. 2, 8). Exhibit 12 appears to be a list of defendant Gilles Abitbol's appearances in federal court, dating from 2004 to 2017. Exhibit 15 appears to be a list of defendant Gilles Abitbol's charges relating to plaintiff's 2013 federal court action.

In support of her claims, plaintiff cites defendant Gilles Abitbol's deposition in New York State Court in which he stated that he did not "reveal" his immigration "status" when he was getting admitted to the New York State Bar.[9]  She also argues that defendant Attorney McRae encouraged defendant Gilles Abitbol to assert his Fifth Amendment rights during the state court deposition, when plaintiff asked him about his "immigration status," implying that he must be an illegal alien or he would have answered the question.

Plaintiff has no legal basis to claim that plaintiff's representation of her, or any other party, was "unauthorized" or invalid because of his alleged "immigration status." Every exhibit, related to Attorney Abitbol's "status" that plaintiff has attached to her complaint states just the opposite.  In addition, contrary to plaintiff's assertions, in New York State, one is not "automatically" disqualified from being admitted to the New York State Bar solely because of "immigration status."   The New York State Appellate Division, Fourth Department held that a federal statute[10] requiring a state to pass a law providing for eligibility of illegal aliens for State and local public benefits, including the issuance of professional licenses, was unconstitutional. *In re Vargas*, 131 A.D.3d 4, 23-25 (2d Dep't 2015).  Specifically, the court stated that

> giving all deference to the federal government's supreme

---

[9] The deposition was in an action that plaintiff brought against Attorney Gilles Abitbol.  The allegation about his failure to "reveal" his immigration status was the subject of the letter from the Grievance Committee referred to above.

[10] The federal statute, 8 U.S.C. § 1621(d) gives the States authority to "provide for eligibility of illegal aliens for State and local public benefits." 131 A.D.3d at 23.  The Appellate Division held that requiring the State to pass such a law before allowing illegal aliens to obtain such benefits violated the 10th Amendment of the United States Constitution.  *Id.* at 23-25.

authority to regulate immigration and to determine
immigration policy, because the opt-out provision of 8 U.S.C.
§ 1621(d) as it applies to the question of the admission of
attorneys and counselors-at-law to the practice of law in the
State of New York, is constitutionally infirm, we reject its
authority to mandate the governmental mechanism by which
the state may exercise its discretion to opt out of the
restrictions imposed [by the statute]. . . .

*Id.* at 27.  The court further stated that "a decision to opt out from the restrictions

imposed [by the statute], to the limited extent that it governs the admission of attorneys

as professional licensees, may be lawfully exercised by the judiciary in order to be

consistent with the Judiciary Law of the State of New York and the sovereignty

guaranteed by the Tenth Amendment." *Id.*  The court ultimately stated that it was not

"encouraging unauthorized entry into the United States," but found no legal

impediment or rational basis for withholding the privilege of practicing law in the State

of New York from undocumented aliens who have been granted Deferred Action for

Childhood Arrivals ("DACA") relief,[11] as long as the individual met all the other

requirements for admission. *Id.* at 27-28.  The court also stated that the determination of

whether to grant DACA relief and grant employment authorizations to such persons

"rests firmly with the Department of Homeland Security." *Id.* at 28.

Although the court is well aware that the *Vargas* involved an alien who was

granted DACA relief, but the holding essentially found that the judiciary was in charge

of admitting attorneys, while Homeland Security was in charge of making the alien

determination.  Thus, defendant's immigration "status," whatever that might mean, does

---

[11] As noted by the Appellate Division, the DACA program provides for "deferral of removal,"
but does not "confer immigration status" on the applicant. 131 A.D.3d at 8 n.3 (citation omitted).

not "automatically" disqualify him from admission to the Bar in New York State, and whatever his "status" was during the federal or state litigation, it had no bearing on the result. Plaintiff's allegation that if she were aware of this "status," she would have chosen a better attorney is self-serving and cannot establish the causation element of her RICO case.

If plaintiff believed that defendant Gilles Abitbol overcharged her, or if his actual representation of her was somehow negligent, then plaintiff has had the opportunity to make the appropriate claims in the appropriate venues. She may not convert such claims into a RICO case by involving everyone who ever assisted defendant Gilles Abitbol or represented him in a claim that this plaintiff brought against him.[12] Because the lynchpin of her claim fails, based upon her own complaint and submissions, the rest of plaintiff's claims against the rest of the defendants fail.

In addition, as stated above, the RICO conduct must be both the proximate and but for cause of the plaintiff's injury. *Lundy v. Catholic Health Systems of Long Island, Inc.*, *supra*. The Supreme Court has held that the "proximate cause" required for plaintiff to recover under the RICO statute requires a "direct relation" between the injury asserted and the conduct alleged. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). The less direct an injury, the more difficult it would be to determine what portion of the damages were attributable to "the RICO violation as

---

[12] For example, plaintiff alleges that by filing plaintiff's 2013 complaint in federal court, Attorney Gilles Abitbol committed "wire fraud." (Compl. ¶ 92). Plaintiff also claims that when defendant Abitbol hired defendant Attorney McRae and his law firm to represent him in the action that plaintiff brought against Abitbol in state court, they obstructed justice, in support of the Racketeering by having Attorney Abitbol plead the Fifth Amendment. (Compl. at p.4).

distinct from other independent factors." *Commercial Cleaning Svcs., LLC v. Colin Svc. Systs., Inc.*, 271 F.3d 374, 381-82 (2d Cir. 2001) (citing *Holmes*, 503 U.S. at 273).

A link that is "'too remote, purely contingent, or indirect is insufficient.'" *Wang v. Yien-Koo King*, No. 18 Civ. 8948, 2019 WL 1763230, at *6 (S.D.N.Y. Apr. 22, 2019) (quoting *Empire Merchants, LLC v. Reliable Churchill, LLLP*, 902 F.3d 132, 141 (2d Cir. 2018) (quoting *Hemi Grp., LLC v. City of New York,* 599 U.S.1, 17 (2010)) (internal quotations omitted). In order to make the determination, the court must evaluate "'whether it would be difficult to determine how much the tortious conduct injured the defendant as compared to other factors.'" *Id.*

In this case, the complaint cannot remotely meet the proximate cause requirement. The problem in plaintiff's claim is that the "injury" to her business and her reputation was based on the disciplinary proceedings against her.[13] Judge D'Agostino, whose decision was affirmed by the Second Circuit,[14] found that plaintiff's due process rights were not violated by the State defendants in plaintiff's 2013 case. Whatever defendant Abitbol's "immigration status" was, it had nothing to do with his performance during the case, nor did it have anything to do with Judge D'Agostino's

---

[13] The court notes that defendant Gilles Abitbol did not represent plaintiff during the time that the state proceedings were being instituted against her and when she signed the consent settlement, surrendering a portion of her license. Plaintiff was apparently represented by various attorneys during that time. (Dkt. No. 40 in 13-CV-707 at pp. 5-7). Part of the problem with plaintiff's due process claim was that she consented to the partial revocation of her license, and then decided that it was not the best thing for her to do.

[14] Judge D'Agostino had a further opportunity to review her decision when plaintiff made a motion to "vacate" after the Second Circuit affirmed the decision. Clearly, the issue of plaintiff's "due process" during the disciplinary process has been thoroughly litigated. The plaintiff's consent to the settlement of her disciplinary process and her treatment by the state agency were not directly related to defendant Abitbol's "immigration status."

decision to dismiss the action. Any alleged "misrepresentations"[15] made, many years prior to the federal court lawsuit could not be the "direct cause" of plaintiff's injuries. Plaintiff's attempts to make everything that defendant Gilles Abitbol did after the alleged misrepresentations into RICO violations are inadequate.[16]

Plaintiff's attempts to convert every litigation activity and every court filing by defendants Abitbol, McRae, and Finnerty into predicate acts for the RICO claim are similarly frivolous. In *Kim v. Kimm*, 884 F.3d 98, 103-105 (2d Cir. 2018), the Second Circuit held that "[i]n the absence of corruption," litigation activity "'cannot act as a predicate offense for a civil-RICO claim.'" *Id.* at 104 (citations omitted). In *Kim*, plaintiff claimed that the defendants committed mail and wire fraud by, inter alia, preparing, signing, and filing declarations in conjunction with a lawsuit. *Id.* at 103. The Second Circuit found that "'[i]f litigation activity were adequate to state a claim under RICO, every unsuccessful lawsuit could spawn a retaliatory action,'" which "' would inundate the courts with procedurally complex RICO proceedings.'" *Id.* (citations omitted). Allowing such claims would chill the public policy goal of maintaining "open access to the courts." *Id.* at 104.

As discussed above, it is clear that defendant Gilles Abitbol was admitted to practice law in New York State and in the Northern District of New York during the

---

[15] This court is in **no** way implying that such misrepresentations were made. I am only accepting as "true" the claims made in plaintiff's complaint for purposes of argument only.

[16] For example, plaintiff's attempt to link the purchase of real property with some RICO violation because the defendant "used" proceeds that he acquired through his illegal law practice are completely frivolous.

time in question[17] and remains so currently. Plaintiff's attempt to relitigate all of her previous actions by making such frivolous RICO claims must be dismissed on initial review.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE AS FRIVOLOUS**, and it is

**ORDERED**, that plaintiff's motion to file electronically (Dkt. No. 30) is **DENIED WITHOUT PREJUDICE** at this time. If the court does not adopt this Order and Report-Recommendation, then plaintiff may reapply for electronic filing privileges.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 7, 2020

_____

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

---

[17] The court must also point out that there is no question about citizenship or "immigration status" on the admission form for attorneys in the Northern District of New York. The court would also point out that the proper method for making a complaint against an attorney who practices in the Northern District of New York is outlined in Local Rule 83,4(g) and involves making the complaint to the Chief Judge of the Northern District of New York, who determines whether to send the complaint to a panel for its review. *Id.*